

# STATE OF SOUTH CAROLINA
# CERTIFICATE OF TITLE
## OF A VEHICLE

| VEHICLE ID NUMBER | YEAR MAKE | MODEL | NEW/USED |
|---|---|---|---|
| 1JJV532W56L966059 | 2006 WANC | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 10-11-2013 | | 15000 | 770110269870959C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)            CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
PO BOX 35707
BILLINGS MT 591075707
DATE OF LIEN          09/17/2013

1ST LIEN RELEASED _____
                        (DATE)
BY _____
    (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                    NIKKI R HALEY
EXECUTIVE DIRECTOR                 GOVERNOR

044982075

**EXHIBIT "D"**

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

0003    0002332



# STATE OF SOUTH CAROLINA
# CERTIFICATE OF TITLE
## OF A VEHICLE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | | NEW/USED |
|---|---|---|---|---|---|---|
| 1JJV532W46L966067 | | 2006 | WABA | RFLWHS | | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 10-11-2013 | | 15000 | 770110269871890C |

**VEHICLE BRAND(S)**
EXEMPT

FULL NAME OF OWNER(S)        CUSTOMER NUMBER 032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233256

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
PO BOX 35707                      1ST LIEN RELEASED
BILLINGS MT 591075707
DATE OF LIEN    09/17/2013                    (DATE)
                                    BY
                                    (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH.

KEVIN A. SHWEDO                                NIKKI R. HALEY
EXECUTIVE DIRECTOR                             GOVERNOR

044982077



044982068

# STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | YEAR MAKE | MODEL | NEW/USED |
|---|---|---|---|
| 1JJV532W86L966069 | 2006 WABA | RFLWHS | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 10-11-2013 | | 15000 | 770110269873037C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)                    CUSTOMER NUMBER 032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
PO BOX 35707
BILLINGS MT 591075707                          1ST LIEN RELEASED _____
DATE OF LIEN         09/11/2013                                          (DATE)
                                                        BY _____
                                                        (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                              NIKKI R. HALEY
EXECUTIVE DIRECTOR                           GOVERNOR

044982074





044982071

# STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | | NEW/USED |
|---|---|---|---|---|---|
| 1JJV532W46L966070 | 2006 | WABA | RFLWHS | | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 10-11-2013 | | 15000 | 77011026987168 4C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233256

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
PO BOX 35707
BILLINGS MT 591075707                    1ST LIEN RELEASED _____
DATE OF LIEN        09/17/2013                                  (DATE)
                                          BY _____
                                              (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH.

KEVIN A SHWEDO                            NIKKI R. HALEY
EXECUTIVE DIRECTOR                        GOVERNOR

044982079



### STATE OF SOUTH CAROLINA
### CERTIFICATE OF TITLE
#### OF A VEHICLE

VEHICLE ID NUMBER | YEAR MAKE | MODEL | NEW/USED
1JJV532W06L966065 | 2006 WABA | RFLWHS | USED

BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER
TL | 10-11-2013 | | 15000 | 770110269872484C

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
P.O BOX 35707                           1ST LIEN RELEASED _____
BILLINGS MT 591075787                                    (DATE)
DATE OF LIEN        09/12/2013          BY _____
                                        (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                         NIKKI R. HALEY
EXECUTIVE DIRECTOR                      GOVERNOR

044982076



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

VEHICLE ID NUMBER          YEAR  MAKE     MODEL        NEW/USED
1JJV532W96L966064          2006  WABA     RFLWHS       USED

BODY STYLE     DATE ISSUED    ODOMETER    WEIGHT    TITLE NUMBER
TL             10-11-2013                 15000     77011026987288OC

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)              CUSTOMER NUMBER. 032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
PO BOX 35707                           1ST LIEN RELEASED
BILLINGS MT 591075707                                        (DATE)
DATE OF LIEN       09/17/2013         BY
                                         (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                        NIKKI R. HALEY
EXECUTIVE DIRECTOR                     GOVERNOR

044982069

0003      0002326          SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

VEHICLE ID NUMBER          YEAR  MAKE    MODEL          NEW/USED
1JJV532W56L966062          2006  WANC    1JJV           USED

BODY STYLE    DATE ISSUED    ODOMETER      WEIGHT    TITLE NUMBER
TL            10-11-2013                   15000     7701102698711B9C

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)              CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP                    1ST LIEN RELEASED _____
PO BOX 35707                                                    (DATE)
BILLINGS MT 591075707
DATE OF LIEN    09/17/2013                       BY _____ (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH.

KEVIN A. SHWEDO                    NIKKI R HALEY
EXECUTIVE DIRECTOR                 GOVERNOR

044982072

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

0003    0002329

EXHIBIT "B"

Doc Request::
PROCONSIGNING 899333.
1.107_87013
627100 - Fund of Tax

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("Debtor"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "Lender,") under the terms and provisions of this agreement (this "Agreement,") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions thereto, "Equipment.")

☒ See Attached Schedule A

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Payee (Name and Address) | Amount |
|---|---|
| DIAMOND AUTO SALES OF SC INC<br>159 P & N R<br>GREENVILLE, SC 29611 | $189,895.00 |

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $222,168.48 in 36 installments as follows:

(a) $5,844.96 on FEBRUARY 1, 2014 and a like sum on the like date of each month thereafter until fully paid.

(b) In irregular installments as follows:

| # of Payments | Payment Amount | Payment Date |
|---|---|---|

remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 9.95% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $350.00 equating to an annual percentage rate of 9.95% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. In the event Schedule contains (i) a period of longer than a month before the first Payment Date (the "Initial Amount") or (ii) the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (this excess number of days herein referred to as a "Stub Period") any number of months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either case, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid accrued interest for each Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall increase accrue interest at the rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH AMOUNT (IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT).

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below, or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "Payment in Full" or is tendered as full satisfaction of a disputed amount, or (ii) is tendered with other conditions or limitations (collectively, "Disputed Payment") must be mailed or delivered to at the address for billing inquiries shown on the invoice or statement and not to the current payment address.

Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

## 1.0 THE EQUIPMENT

1.1 Disclaimer. LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its inability for use in Debtor's business.

1.2 Equipment Receipt and Use. Debtor warrants and agrees that the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby. Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act. The Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business. The Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation. Lender may inspect the Equipment and all books and records relating to the performance of Debtor's business under this Agreement at all reasonable times and from time to time. The Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that Debtor may, in the regular course of Debtor's business, provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned give a current location thereof to Lender in writing.

1.3 Insurance. Debtor shall at all times bear all risk of loss or of damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance evidencing the coverage to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by any acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or otherwise modified except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender any proceeds of policies insured by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name in all remittances without the joinder of Debtor.

Page 1 of 7 of Loan and Security Agreement dated DECEMBER 18, 2013 between BUEL, INC. (Debtor) and GE CAPITAL COMMERCIAL, INC. (Lender).

**1.4** **Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

**2.0** **SECURITY INTEREST**

**2.1** **Security Interest.** Debtor hereby grants to General Electric Capital Corporation, as agent for Lender, and its successors and assigns, a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, and (b) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character whether now existing or hereafter arising, to Lender or Lender's Affiliates, whether under this Agreement or any other agreement ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2** **Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes; assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3** **Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender, (ii) if Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change:

**3.0** **ACCOUNT MANAGEMENT AND PAYMENT PROCESSING**

**3.1** **Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2** **Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3** **Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4** **Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depository institution because of such return and an additional handling charge in the amount of $20, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5** **Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose: information about Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor's accounts, credit experience and account information regarding Debtor. This shall be continuing authorization for all present and future disclosures of Debtor's account information, credit application and credit experience on Debtor made by Lender, or any Entity requested to release such information to Lender.

**3.6** **Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding; this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of interest permitted by applicable law as so construed; then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the Indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such Indebtedness.

**4.0** **PERFORMANCE BY LENDER.**

**4.1** **Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

**4.2** **Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN-FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE

621700 - Fund off fax
1.10T 8/2013
Doc Request :
PRICINGENGINE 699353                                                      ORIGINAL FOR GE CAPITAL

BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0    DEFAULT AND REMEDIES**

5.1    Events of Default. Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "**Governmental Authority**"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; or (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein.

5.2    Remedies. Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment: Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

5.3    Acceleration Interest. Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0    PREPAYMENT**

6.1    Partial Prepayment and Reschedule. (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("**Excess Remittances**") Lender may, at its option: (i) apply any portion of such Excess Remittances in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "**Effective Reschedule Date**")) calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender permits Debtor to make a partial prepayment pursuant to clause (b)(ii) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

6.2    Prepayment in Full. Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "**Effective Prepayment Date**"). If the prepayment is made prior to the last twelve months of the contract, Debtor shall pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

**7.0    ASSIGNMENT AND GENERAL PROVISIONS**

7.1    Chattel Paper. The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked "ORIGINAL FOR GE CAPITAL" which is delivered to and held by GE Capital.

7.2    Assignment and Waiver. This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement and sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement,

Page 3 of 7 of Loan and Security Agreement dated DECEMBER 18, 2013 between BUEL, INC. (Debtor) and GE CAPITAL COMMERCIAL INC. (Lender).
621700 - Fund off fax
1.10T 8/2013
Doc Request :
PRICINGENGIN...                                        ORIGINAL FOR GE CAPITAL

reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant that purchases or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee or of participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

7.3     General. (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor: In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement.

7.4     Additional Covenants and Oral Agreement. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

7.5     Waiver of Trial By Jury. LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

7.6     Governing Law/Choice of Venue. Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Utah and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Utah (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in the State of Utah, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; provided, however, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction.. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

7.7     Execution and Delivery of Agreement. This Agreement will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor (at the e-mail, facsimile or business address you provide to us) an electronic (e-mail or facsimile) or paper version of each document to be signed by you, including this Agreement and any schedules, exhibits or related documents (each, a "Document"); (ii) you will print (if applicable) and manually sign the signature page and initial the provisions (if the Document includes provisions requiring your initials) of each such Document and deliver to us by facsimile or other means the signed Documents; (iii) we will manually sign each signature page of the Documents so delivered by you (if the Document requires our signature); and (iv) we will attach each fully signed signature page to a printed paper copy of the applicable Document. By so signing and transmitting a Document to us, you confirm your intent to sign such Document and accept its terms. You acknowledge that we are relying upon your promise that you have not modified the Document sent to you for signature. We both intend that each Document produced by this process which contains Lender's original manual signature shall be for all purposes (including perfection of security interests and admissibility of evidence) the sole original authenticated Document. We will retain each original authenticated Document (as described in the preceding sentence), which will be conclusively presumed to be identical to the version signed by you.

Page 4 of 7 of Loan and Security Agreement dated DECEMBER 16, 2013 between BUEL, INC. (Debtor) and GE CAPITAL COMMERCIAL INC. (Lender).
621700 - Fund off fax
1.10T  8/2013
Doc Request :
PRICINGENGINE 699353                                    ORIGINAL FOR GE CAPITAL

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH GE CAPITAL

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT
(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On **DECEMBER 16, 2013**, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor, the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

| | |
|---|---|
| Dated: **DECEMBER 16, 2013** | Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract. |
| Lender: GE CAPITAL COMMERCIAL INC. | Debtor: BUEL, INC. |
| By: | By: |
| Name: VICTORIA White | Name: R.B. Watson |
| Title: AUTHORIZED SIGNER | Title: PRESIDENT |
| 300 E. JOHN CARPENTER FREEWAY | State of Organization: NC |
| (Street Address) | |
| IRVING, TEXAS 75062-2712 | Date of Birth: |
| (City, State and Zip Code) | (Individual/Sole Proprietorship) |

Principal Residence/Chief Executive Office/Place of Business:

**140 DOVE RIDGE LN**
(Street Address)

**CHESNEE, SC 29323**
(City, State and Zip Code)

Billing/Invoice Address:

(Address)

(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

**140 DOVE RIDGE LN**
(Equipment Street)

**CHESNEE, SC 29323**
(Equipment City, County, State, and Zip)

---

Page 5 of 7 of Loan and Security Agreement dated DECEMBER 16, 2013 between BUEL, INC. (Debtor) and GE CAPITAL COMMERCIAL INC. (Lender).
621700 - Fund off tax
1.10T 8/2013
Doc Request:
PRICINGENGINE 699353                                    ORIGINAL FOR GE CAPITAL

Diamond Motors          DEC/17/2013/TUE 02:18 PM          FAX No. 864-422-1522          P. 007/057

# SCHEDULE A

Agreement Number:

Attached to and made a part of a
LOAN AND SECURITY AGREEMENT          dated          **DECEMBER 16, 2013**
(Name of document, such as Security Agreement)
between BUEL, INC. and GE CAPITAL COMMERCIAL, INC.

(Describe property fully, including year if appropriate, make, model, kind of unit, serial number and any other pertinent information.)

| Year | Manufacturer | Model | Description | Serial Number |
|------|--------------|-------|-------------|---------------|
| 2004 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W04L864584 |
| 2004 | THERMO KING | SB210 | SB210 | 013685638 |
| 2005 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W15L898250 |
| 2005 | THERMO KING | SB210 | SB210 | 036X88986 |
| 2006 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W16L966057 |
| 2006 | THERMO KING | SB210 | SB210 | 0156AF5251 |
| 2004 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W24L864585 |
| 2004 | THERMO KING | SB210 | SB210 | 083685689 |
| 2005 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W35L899248 |
| 2005 | THERMO KING | SB210 | SB210 | 103688081 |
| 2006 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W36L966058 |
| 2006 | THERMO KING | SB210 | SB210 | 0156AF5250 |
| 2004 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W44L864586 |
| 2004 | THERMO KING | SB210 | SB210 | 073685340 |
| 2005 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W45L899243 |
| 2005 | THERMO KING | SB210 | SB210 | 103688085 |
| 2005 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W55L899249 |
| 2005 | THERMO KING | SB210 | SB210 | 083685577 |
| 2005 | WABASH TRAILERS | REFRIGERATED VANS 53' | REFRIGERATED VANS | 1JJV532W85L899245 |
| 2005 | THERMO KING | SB210 | SB210 | 103688063 |

PRINCIPAL PENS #404
Doc Request :
1.10T. #2013
621700 - Fund off tax
ORIGINAL End of CAPITAL

**BUEL, INC.**

BY: (x) *B. Watson, Pres*

Name: *R. B. Watson*

TITLE: PRESIDENT

Page 7 of 7 of Loan and Security Agreement dated DECEMBER 16, 2013 between BUEL, INC. (Debtor) and GE CAPITAL COMMERCIAL INC. (Lender).
621700 - Fund off fax
1.10T  8/2013
Doc Request :
PRICINGENGINE 699353                              ORIGINAL FOR GE CAPITAL



## STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | | YEAR | MAKE | MODEL | | NEW/USED |
|---|---|---|---|---|---|---|
| 1JJV532W45L899243 | | 2005 | WABA | 1JJV | | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|---|
| TL | 01-06-2014 | | | 14500 | 770110273128774C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744              1ST LIEN RELEASED _____
DATE OF LIEN          12/16/2013                          {DATE}
                                    BY _____
                                            {AUTHORIZED AGENT}

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                      NIKKI R HALEY
EXECUTIVE DIRECTOR                  GOVERNOR

## EXHIBIT "F"

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | | NEW/USED |
|---|---|---|---|---|---|
| 1JJV532W16L966057 | 2006 | WABA | RFLWHS | | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 15000 | 770110273134012C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN          12/16/2013

1ST LIEN RELEASED _____
                                    (DATE)
BY _____
        (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                          NIKKI R HALEY
EXECUTIVE DIRECTOR                       GOVERNOR



SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W44L864586 | 2004 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 15000 | 770110273133089C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD                    1ST LIEN RELEASED _____
BILLINGS MT 591026744                          (DATE)
DATE OF LIEN        12/16/2013    BY _____
                                    (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A SHWEDO                    NIKKI R HALEY
EXECUTIVE DIRECTOR                GOVERNOR

0010    0008662        SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



## STATE OF SOUTH CAROLINA
# CERTIFICATE OF TITLE
## OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W04L864584 | 2004 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 15000 | 770110273133444C |

**VEHICLE BRAND(S)**
**EXEMPT**

**FULL NAME OF OWNER(S)**
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

**CUSTOMER NUMBER** 032271951

**FIRST LIENHOLDER**
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN        12/16/2013

1ST LIEN RELEASED _____
                              (DATE)
BY _____
      (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W24L864585 | 2004 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 15000 | 770110273132891C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

CUSTOMER NUMBER 032271951

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN 12/16/2013

1ST LIEN RELEASED _____
(DATE)
BY _____
(AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR

0010    0008655    SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



STATE OF SOUTH CAROLINA
CERTIFICATE OF TITLE
OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W85L899245 | 2005 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 14500 | 77011027313223OC |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)          CUSTOMER NUMBER  032271951
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 NESPER RD
BILLINGS MT 591026744

1ST LIEN RELEASED _____

DATE OF LIEN        12/16/2013                    (DATE)

BY _____
(AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO                              NIKKI R HALEY
EXECUTIVE DIRECTOR                          GOVERNOR

0010      0008668            SEE REVERSE SIDE FOR OPENING INSTRUCTIONS



## STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W36L966058 | 2006 | WABA | RFLWHS | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 15000 | 770110273134186C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

CUSTOMER NUMBER  032271951

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN      12/16/2013

1ST LIEN RELEASED _____
                                        (DATE)
BY _____
          (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR

0010    0008667        SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

# STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | YEAR MAKE | MODEL | NEW/USED |
|---|---|---|---|
| 1JJV532M35L899268 | 2005 WABA | 11JV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 16500 | 7701102713252529C |

VEHICLE BRAND(S)
EXEMPT

FULL NAME OF OWNER(S)
BUEL INC
160 DOVE RIDGE LN
CHESNEE SC 29323236

CUSTOMER NUMBER 032271951

FIRST LIENHOLDER
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN 12/16/2013

1ST LIEN RELEASED
_____ (DATE)
BY _____ (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR



# STATE OF SOUTH CAROLINA
# CERTIFICATE OF TITLE
## OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W15L899250 | 2005 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 14500 | 770110273128196C |

**VEHICLE BRAND(S)**
**EXEMPT**

**FULL NAME OF OWNER(S)**
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

**CUSTOMER NUMBER** 032271951

**FIRST LIENHOLDER**
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN         12/16/2013

1ST LIEN RELEASED _____
                                    (DATE)
BY _____
        (AUTHORIZED AGENT)

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS
REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE
LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR

0010    0008649        SEE REVERSE SIDE FOR OPENING INSTRUCTIONS





# STATE OF SOUTH CAROLINA
# CERTIFICATE OF TITLE
## OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1JJV532W55L899249 | 2005 | WABA | 1JJV | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| TL | 01-06-2014 | | 14500 | 770110273133238C |

**VEHICLE BRAND(S)**
EXEMPT

**FULL NAME OF OWNER(S)**
BUEL INC
140 DOVE RIDGE LN
CHESNEE SC 293233236

**CUSTOMER NUMBER** 032271951

**FIRST LIENHOLDER**
GENERAL ELECTRIC CAPITAL CORP
3333 HESPER RD
BILLINGS MT 591026744
DATE OF LIEN        12/16/2013

1ST LIEN RELEASED _____
                                {DATE}
BY _____
         {AUTHORIZED AGENT}

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES THAT THE PERSON HEREIN IS REGISTERED BY THIS DEPARTMENT AS THE LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE LIENS, IF ANY, HEREIN SET FORTH

KEVIN A. SHWEDO
EXECUTIVE DIRECTOR

NIKKI R HALEY
GOVERNOR

0010    0008658         SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | | |
|---|---|---|
| IN RE:  BUEL, INC. A NORTH CAROLINA<br>CORPORATION, | ) | CHAPTER 11 |
| | ) | CASE NO. 14-10026 |
| | ) | |
| **DEBTOR,** | ) | |
| | ) | |
| GENERAL ELECTRIC CAPITAL<br>CORPORATION, | ) | |
| | ) | |
| | ) | |
| MOVANT, | ) | NOTICE OF OPPORTUNITY |
| | ) | FOR HEARING (No Protest) |
| VS. | ) | |
| | ) | |
| BUEL, INC. A NORTH CAROLINA<br>CORPORATION, | ) | |
| | ) | |
| | ) | |
| RESPONDENT, | ) | |

TAKE NOTICE that an application or motion has been filed by General Electric Capital Corporation.  A copy of the application or motion accompanies this notice.

TAKE FURTHER NOTICE that any response, including objection, to the relief requested in the attached application or motion, should be filed with the Clerk of the Bankruptcy Court within fifteen (15) days of this Notice and a copy served on the attorney identified below and upon other parties as required by law or Court order.  Any response shall clearly identify the specific motion or application to which the response is directed, and it shall comply fully with Local Bankruptcy Rule 9013-1.

TAKE FURTHER NOTICE that if no request is filed in a timely manner, no hearing will be held and the Court will consider the matter on the record and enter its ruling.

TAKE FURTHER NOTICE that if a response is timely filed and served, the Court will conduct a hearing on **May 21, 2014 at 9:30 a.m.** at the United States Bankruptcy Court for the Western District, Asheville, North Carolina.  No further notice of this hearing will be given.

Date of notice:  March  20  , 2014.

/s/ Rebecca A. Leigh
Rebecca A. Leigh
Attorney for General Electric Capital Corporation
N. C. Bar No. 24820

**Address of Court**:
United States Bankruptcy Court
100 Otis Street, Room 112
Asheville, NC 28801-2611

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

IN RE:  BUEL, INC. A NORTH CAROLINA   )    **CHAPTER 11**
       CORPORATION,              )    **CASE NO. 14-10026**
                                    )
            **DEBTOR,**            )

## PARTIES TO BE SERVED

THIS IS TO CERTIFY that the undersigned counsel of record has this date served a copy of the attached *Motion for Relief from Stay of Act Against Property, or in the Alternative for Adequate Protection and Notice of Opportunity for Hearing (No Protest)*, was served upon the following by placing a copy of same in the United States mail, postage pre-paid, first-class mail, and electronic filing, or electronic filing, unless otherwise indicated, addressed to the following:

Steven T. Salata
U. S. Bankruptcy Clerk
P.O. Box 34189
Charlotte, North Carolina  28234-4189

Linda Simpson
U.S. Bankruptcy Administrator
402 West Trade Street
Suite #200
Charlotte, NC 28202

Travis W. Moon
Moon Wright & Houston, PLLC
227 West Trade Street, Suite 1800
Charlotte, NC  28202

Buel, Inc., a NC Corporation
15 Blue Spruce Drive
Candler, NC  28715

Kiah T. Ford IV
Parker Poe Adams & Bernstein LLP
401 S. Tryon Street, Suite 3000
Charlotte, NC  28202

Holmes P. Harden
Williams Mullen
P.O. Box 1000
Raleigh, NC  27602

Robert A. Cox, Jr.
Bradley Arant Boult Cummings LLP
100 N. Tryon Street, Suite 2690
Charlotte, NC  28202

E.B. Trey McLeod, III
SC Dept. of Employment & Workforce
P.O. Box 8597
Columbia, SC  29202

Melanie D. Johnson Raubach
Hamilton Stephens Steele + Martin, PLC
201 S. College Street
Charlotte Plaza, Suite 2020
Charlotte, NC  28244-2020

Even S. Goldstein
Updike, Kelly & Spellacy, P.C.
P.O. Box 231277
Hartford, CT  06123-1277

Tasha B. Thompson
SC Dept. of Revenue
P.O. Box 12265
Columbia, SC  29211

Kenneth Lautenschlager
Johnston, Allison & Hord, P.A.
1065 East Morehead Street
Charlotte, NC  28204

Conrad K. Chiu
Pryor Cashman LLP
7 Times Square
New York, NY  10036-6569

American Express
P.O. Box 650448
Dallas, TX  75265-0448

Applied Risk Mgmt SOL
409-A Alamance Rd.
Burlington, NC  27215

BB&T
Processing Ctr
P.O. Box 580050
Charlotte, NC  28258-0050

BCS Services
Steve Boehm
3237 Conestoga Tr
Richfield, WI  53076

Blue Beacon International
P.O. Box 856
Salina, KS  67402-0856

Bosselman boss Shop
Corporate Billing
P.O. Box 1000 Dept 959
Memphis, TN  38148

Brown's Body Shop & Auto Glass
1751 Clark road
Inman, SC  29349

Cat Commercial Acct
P.O. Box 905299
Charlotte, NC  28290-5229

CNTS Leasing LLC
P.O. Box 456
Chesnee, SC  29323

Comdata
P.O. Box 548
Brentwood, TN  37024

Continental Tire The Americas
P.O. Box 60049
Charlotte, NC  29323

Federal Motor Carriers Safety Admin
1800 Century Blvd. NE, Suite 1700
Atlanta, GA  30345

Graybill Tire and Repairs
1301 225th Street
Rockport, MO  64482

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Paccar Financial Corp
P.O. Box 530491
Atlanta, GA  30353-0491

Pilot Receivables LLC
P.O. Box 502711
St Louis, MO  63150-2711

Smith Moore Leatherwood LLP
P.O. Box 87
Greenville, SC  29602

SunTrust Bank
350 East Henry Street
Spartanburg, SC  29302

Twin State Trailers
8621 Statesville Road
Charlotte, NC  28269

Wells Fargo Equip Finance Inc.
P.O. Box 1450
NW-8178
Minneapolis, MN  55485-8178

Dated:  March 20th, 2014.

RESPECTFULLY SUBMITTED,

/s/ Rebecca A. Leigh
Rebecca A. Leigh
Attorney for GECC
N. C. Bar No. 24820

**OF COUNSEL:**

Law Offices of Rebecca A. Leigh, P.C.
301 S. Greene Street, Suite 201
Greensboro, NC 27401
(336) 389-1800
(336) 389-0060 FAX